IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| ASHLEY J. BOULET, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 6:13-CV-00188-JO |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of | ) OPINION AND ORDER |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

JONES, J.,

Plaintiff Ashley Boulet appeals the Commissioner's decision terminating her disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I REVERSE and REMAND the Commissioner's decision for further proceedings to supplement the record.

## PRIOR PROCEEDINGS

In August 2009, Boulet was receiving payments based on a previous decision in which she was awarded disability benefits under the Social Security Act. The previous decision in which Boulet was found disabled is known as the comparison point decision ("CPD"). The Social Security Administration, through the state disability determination agency, performed a

-1-   OPINION & ORDER

continuing disability review and determined that Boulet's health had improved and that she was no longer disabled as of September 2009. Admin. R. 88-94.

A Disability Hearing Officer ("DHO") reviewed that determination and also found that Boulet had experienced medical improvement and was no longer disabled under the Social Security Act. The DHO's written decision recites that she reviewed the CPD, the medical evidence presented during the prior proceedings, new medical evidence produced during the continuing disability review, and statements from Boulet and her grandmother. Admin. R. 111-19. The DHO summarized the CPD and the medical evidence supporting that decision but the actual documents are not in the record for this appeal. Admin. R. 91, 112, 120.

An ALJ reviewed the DHO's decision. The ALJ's decision reflects that she also reviewed the CPD and medical evidence from the prior proceedings, but did not make that material part of the record. The ALJ described Boulet's medically determinable impairments at the time of the CPD and said that the previous finding of disability was based on a determination that Boulet's mental impairments satisfied the criteria for a presumptively disabling psychotic disorder under section 12.03 of 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"). Admin. R. 19, 21. At several points in the development of this case, administrative personnel made reference to the CPD and medical evidence from the prior proceedings. Admin. R. 19, 21, 91, 94, 112, 120, 359-64. The accuracy of these references cannot be reviewed, of course, because the documents are not in the record before the court.

The ALJ applied the sequential decision making process for determining whether disability continues, as described in 20 C.F.R. sections 404.1594 and 416.994. The ALJ found that, as of September 1, 2009, Boulet's combined impairments did not satisfy the criteria for

-2-   OPINION & ORDER

Listing 12.03 or any of the presumptively disabling conditions enumerated in the Listing of Impairments. Admin. R. 21-23. The ALJ relied on a psychodiagnostic evaluation from June 2009 and Boulet's testimony that she no longer needed mental health treatment to conclude that medical improvement had occurred resulting in a decrease in the severity of Boulet's impairments. Admin. R. 23. The ALJ determined that despite her impairments, from September 1, 2009, Boulet retained the residual functional capacity ("RFC") to perform a range of sedentary work with limited climbing, carrying, postural activities, and activities involving the hands and wrists. Boulet's mental impairments limited her to entry level work requiring only simple reasoning, without public contact and only occasional casual contact with coworkers. Admin. R. 24-29.

The vocational expert ("VE") testified that a person having Boulet's RFC and vocational factors could perform the activities required in unskilled sedentary occupations such as eyeglass frame polisher, toy stuffer, and touchup screener, representing hundreds of thousands of jobs in the national economy. Admin. R. 30, 60-61. The ALJ concluded that Boulet's disability ended as of September 1, 2009, and she was no longer disabled within the meaning of the Social Security Act. Admin. R. 30.

## LEGAL STANDARDS

### A. Termination of Benefits

Once the Commissioner finds a claimant disabled under the Social Security Act, a presumption of continuing disability arises in favor of the claimant. *Bellamy v. Sec'y of Health & Human Serv.*, 755 F.2d 1380, 1381 (9th Cir. 1985). The Commissioner may terminate disability benefits when substantial evidence supports a finding that medical improvement has

occurred such that the claimant can engage in substantial gainful activity. 42 U.S.C. § 423(f); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1460 (9th Cir. 1995). Accordingly, although the claimant retains the burden of proving disability, the Commissioner must produce sufficient evidence of medical improvement to rebut the presumption of continuing disability. *Bellamy*, 755 F.2d at 1381.

### B. Standard of Review

The district court may set aside the Commissioner's decision to terminate benefits only if the findings of fact are not supported by substantial evidence or if the decision is based on legal error. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is less than a preponderance of the evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Under this standard, the court must consider the record as a whole, and uphold the Commissioner's factual findings that are supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Robbins*, 466 F.3d at 882; *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I. Claims of Error

Boulet contends that substantial evidence does not support the ALJ's determination that medical improvement related to her ability to work occurred by September 1, 2009. Boulet also contends the ALJ failed to accurately assess her RFC because she erroneously discounted

-4-   OPINION & ORDER

Boulet's subjective statements, the opinions of medical sources, and the statements of lay witnesses.

## II. Medical Improvement

Boulet contends the record is inadequate because the CPD and the medical evidence establishing her medical impairments at the time of that decision were omitted from the record on appeal. Boulet argues that without comparing the earlier medical evidence and findings from the CPD with the more recent medical evidence, the Commissioner cannot show medical improvement to rebut the presumption of continuing disability. Boulet seeks a remand to permit the Commissioner to supplement the record. The Commissioner argues that a remand is unnecessary because the current record establishes that Boulet is no longer disabled.

The Court of Appeals for the Ninth Circuit has not addressed this issue. The courts that have considered it agree that medical improvement, shown by comparing current medical evidence with the medical evidence upon which the prior finding of disability was based, is necessary for a decision to terminate benefits. *See Veino v. Barnhart*, 312 F.3d 578, 587 (2nd Cir. 2002) (without earlier medical evidence, the record was inadequate to review whether substantial evidence supported the Commissioner's finding that the claimant's medical condition had improved); *Byron v. Heckler*, 742 F.2d 1232, 1236 (10th Cir. 1984) (error for Commissioner to focus only on evidence of current disability; evidence of improvement requires evaluation of medical evidence from original finding of disability); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) (same); *Chambers v. Astrue*, 2012 WL 2836224 (D.Or. 2012) (DHO's summary of evidence not in the record before the court was not substantial evidence sufficient to support ALJ's finding of medical improvement).

The Commissioner argues that omitting the prior decision and evidence from the record was harmless because the current record supports the conclusion that Boulet is not now disabled. This argument rests on the common sense notion that, if the claimant was disabled at the time of the CPD and the current evidence shows she is not now disabled, it is reasonable to infer that medical improvement has occurred. The Commissioner's argument is reasonable in a practical sense and has not been foreclosed by cases in this Circuit. Nonetheless, the courts that have addressed the issue have uniformly rejected that argument because the regulatory scheme requires the ALJ to find medical improvement before considering whether the current evidence establishes disability. 42 U.S.C. § 423(F)(1); 20 C.F.R. §§ 404.1594(f), 416.994(b)(5); *Veino*, 312 F.3d at 587.

In *Veino*, the claimant had previously been found to be disabled because he qualified for an impairment enumerated in the Listing of Impairments. Like Boulet, he was later found not to qualify for that listing. The Commissioner argued, as she does here, that this in itself proved that medical improvement had occurred under 20 C.F.R. § 1594(c)(3)(i). The court rejected this argument because section 1594(c)(3)(i) presupposes a finding that medical improvement has occurred and addresses the question whether the improvement affects the claimant's ability to work. 312 F.3d at 587. Because the circumstances in *Veino* cannot be distinguished in any meaningful way from those in this case, I find it persuasive. Without the original medical evidence and the CPD, the court cannot make a reasoned determination whether the DHO and the ALJ accurately summarized that material. I conclude that the ALJ's determination that Boulet experienced medical improvement is not supported by substantial evidence.

## II.  RFC Assessment

Based on the foregoing conclusion, the case must be remanded to supplement the record. I address Boulet's remaining arguments briefly to help focus and expedite the proceedings after remand.

### A.  Credibility Determination

The ALJ found that Boulet's impairments could reasonably be expected to produce some of the symptoms she alleged, but found she lacked credibility regarding the extent to which her symptoms limited her ability to function. Admin. R. 25. An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ identified evidence that Boulet engaged in activities, including swimming, bicycle riding, searching for geodes, and a full range of independent self care, that suggested her physical limitations were not as debilitating as she claimed. The ALJ found no clinical evidence to support the physical limitations Boulet alleged. She noted that Boulet was treated very conservatively and declined to pursue recommended treatments for the conditions she claimed to suffer from. The ALJ also noted inconsistencies in Boulet's subjective statements about her symptoms, limitations, activities, and medications. The ALJ found that Boulet's discontinuance of mental health treatment and admission that she no longer required such treatment suggested her allegations overstated her mental limitations. Admin. R. 25-26. These findings are

supported by substantial evidence and show that the ALJ did not arbitrarily discount Boulet's credibility. Her reasoning is clear and convincing. *Carmickle*, 533 F.3d at 1160; *Tommasetti*, 533 F.3d at 1039. I find no error in the ALJ's credibility determination.

## B. Medical Opinions

Boulet contends the ALJ improperly evaluated the opinions of Charlotte Lin, M.D., Gregory Borstad, M.D., and William Trueblood, Ph.D. An ALJ can discount the opinion of a treating physician for clear and convincing reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

Dr. Lin saw Boulet several times between June 2010 and May 2011. In January 2011, Boulet asked Dr. Lin to write a statement in support of her claim for continuing disability. Dr. Lin wrote that Boulet had been diagnosed with Ehlers-Danlos syndrome involving hypermobility of the joints. Dr. Lin said the condition was debilitating, but did not identify specific functional limitations except to observe that Boulet used a cane. Admin. R. 435. In May 2011, Dr. Lin wrote a second opinion letter indicating that Boulet was not able to do sedentary work and would miss three or more days per month due to pain and fatigue if she were employed in a full time sedentary job. Admin. R. 455-56.

The ALJ gave limited weight to Dr. Lin's opinion letters because they were not supported by her treatment records, objective findings, or clinical observations, none of which reflected the extreme functional limitations suggested in her letter. An ALJ need not accept a medical opinion that is conclusory and unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ noted that Dr. Lin had not treated Boulet for very long before forming her disability opinion. A health care provider's opinion may be given less weight if she

-8-   OPINION & ORDER

has not seen the patient long enough to have obtained a longitudinal picture of the patient's impairments and presents no support for the opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ also found Dr. Lin's opinion inconsistent with the evidence of Boulet's activity level. In the absence of support from the medical findings, the ALJ reasonably concluded that Dr. Lin relied extensively on Boulet's subjective statements to form her opinion of Boulet's functional limitations. Admin. R. 26-27. An ALJ can properly reject the opinion of a treating physician which is premised on the subjective statements of a claimant whose credibility has been properly discounted. *Tommasetti*, 533 F.3d at 1041; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ discounted Dr. Lin's opinion for clear and convincing reasons supported by substantial evidence in the record. I find no error.

Dr. Borstad saw Boulet for a 30 minute new patient evaluation in April 2010. His treatment note reflects that Boulet described arthralgias in multiple locations that seemed to be getting worse. She said she occasionally used pain medication. Dr. Borstad found Boulet had normal range of motion in the shoulders, elbows, wrists, and ankles. He noted mild laxity in the shoulders, knees, and ankles. Boulet had hyperflexibility in the elbows and joints of the hands. Admin. R. 400-01. In September 2010, Dr. Borstad saw Boulet in follow up and had normal objective findings except for hypermobility of some joints in the hands. He indicated that Boulet had a type of Ehlers-Danlos syndrome involving benign hypermobility. Admin. R. 425.

Boulet contends that these notes amount to an opinion that her physical condition had worsened. Pl's Br. 19. To the extent Boulet is correct, Dr. Borstad's findings are entirely consistent with the ALJ's RFC assessment. Accordingly, the ALJ did not reject Dr. Borstad's opinion and did not err.

Dr. Trueblood performed a psychodiagnostic examination in June 2009. In his mental status evaluation, he found that Boulet appeared normal and gave long verbal answers in statements that were coherent and logical. Boulet gave no indication that she was experiencing hallucinations. She understood his statements and responded appropriately. Boulet's affect was appropriate, without signs of irritability or anxiety. Her interpersonal interactions with Dr. Trueblood were fair to good. Boulet was pleasant, appropriate, and expressed herself well. Her motivation and effort were good and she showed no unusual fatigue. Dr. Trueblood said her intellect appeared to be average and her insight and judgment were fair to good. Dr. Trueblood noted that Boulet's responses were tangential and unfocused early in the session but this resolved as the evaluation went on. He said the tangential responses suggested mild attention impairment. Admin. R. 320.

On a brief cognitive screening, Boulet was able to follow three step commands accurately. She made some errors in arithmetic calculations. She was slow in counting by serial 3s forward, but did well counting backward. Dr. Trueblood said this indicated that her mental tracking or concentration was mildly impaired. Boulet performed in the normal range on a basic memory task. Admin. R. 320. Dr. Trueblood concluded that the evaluation indicated Boulet had a mild but significant degree of cognitive or neuropsychological impairment involving attention disturbance and deficits in working memory and executive functions. Admin. R. 321-22.

The ALJ gave Dr. Trueblood's opinion only partial weight, in light of Boulet's abandonment of mental health treatment, statements that her mental health had improved, and reported activity level. The ALJ noted however, that the limitations Dr. Trueblood suggested were accommodated in the RFC assessment. Admin. R. 27.

Dr. Trueblood found impairment in broad categories of function, such as attention, working memory, and executive functions, but did not indicate the specific work related activities these impairments would affect. He said these impairments were significant although mild, but he did not indicate that they would preclude any particular work related activity.

In such circumstances, the Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 374180. These consultants do not treat or examine the claimant, but form their opinions by reviewing the medical evidence in light of their expertise in the disability programs under the Social Security Act. An ALJ may properly rely on a non-examining consultant to interpret the broad findings of an examining psychologist such as Dr. Trueblood, and translate them into more specific vocational limitations that can be used in an RFC assessment. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

The ALJ relied on Sandra Lundblad, Psy.D., in this way in determining Boulet's mental RFC. After reviewing the medical evidence, including Dr. Trueblood's evaluation report, Dr. Lundblad opined that the functional impairments identified by Dr. Trueblood would cause moderate limitations in remembering and sustaining attention and concentration with respect to carrying out detailed instructions. Admin. R. 337-38.

Dr. Lundblad concluded that, in a work setting, Boulet could understand and remember routine simple instructions and procedures, but would not be able to remember more complex instructions. Boulet could sustain attention and concentration to complete simple routine tasks, but not more complex tasks. Admin. R. 339. The ALJ's RFC assessment reasonably reflects

-11-   OPINION & ORDER

Dr. Lundblad's interpretation of the psychological evidence in light of the record as a whole. I find no error in the ALJ's evaluation of Dr. Trueblood's examination report.

C. **Lay Witness Statements**

Boulet contends the ALJ improperly evaluated the statements of her step father and two friends. Boulet's step father said that when Boulet was a teenager, she had joint pain and voluntarily limited her physical activities. He said that she currently has pain in her back, hips, and wrists. Admin. R. 268. He did not identify specific functional limitations or work related activities Boulet could not do. Accordingly, his statement is consistent with the ALJ's RFC assessment.

In May 2011, Jason Perry said that he saw Boulet almost daily and observed that she appeared to frequently change body positions, lie down during the day, and become drowsy from taking medications. Admin. R. 296-97. Jenny Neville said that Boulet frequently changed positions, limited her activities, had difficulty coping with other people, and seemed to have poor concentration at times. Admin. R. 309-10.

The ALJ considered these statements and found them credible evidence that Boulet had significant physical and mental impairments. She found them less than credible to the extent they suggested specific functional limitations in excess of those in her RFC assessment. The ALJ again noted that Boulet engaged in physical activities that showed she was not as limited as the lay witnesses suggested and discontinued medications that would have alleviated the symptoms they described. Admin. R. 28-29. In addition, the ALJ's reasons for discounting Boulet's credibility apply equally to the lay witness statements. *See Molina v. Astrue*, 674 F.3d

1104, 1122 (9th Cir. 2012); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ's interpretation of the lay witness statements in context with the record as a whole is rational and she explained the weight given to the statements with reasons germane to the witnesses. Accordingly, the ALJ's evaluation of this evidence was not erroneous. *See Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (ALJ may reject lay witness statement for reasons germane to the witness); *Robbins*, 466 F.3d at 882 (Court must uphold ALJ's rational factual findings even if the evidence also supports another rational interpretation).

## III.   Remaining Contentions

I reject Boulet's contention that the court should require the Commissioner to reconsider all factual findings on remand. The Commissioner must obtain the CPD and the medical evidence supporting that disability determination to permit a comparison with current evidence and a finding whether Boulet's medical condition improved within the meaning and procedural requirements of the regulations. The Commissioner need not reconsider factual findings that are unaffected by this evidence of Boulet's past condition.

For example, the ALJ's determination regarding the credibility of Boulet's allegations and subjective statements focused on the period beginning with the termination of her disability benefits in September 2009. It is unlikely the historical evidence to be obtained on remand will have any impact on the ALJ's determination that Boulet's current claims are not entirely credible. Similarly, the evidence provided by Drs. Lin, Borstad, Trueblood, and Lundblad goes to Boulet's current medical condition. It is unlikely the historical evidence of Boulet's past medical condition will have any impact on the ALJ's evaluation of the evidence these physicians

provided. Likewise, the lay witness statements relate to the period after the termination of Boulet's disability benefits. The Commissioner may revisit these issues if she finds it appropriate to do so but is not required to engage in unnecessary reevaluation of matters that are unaffected by evidence received on remand.

I also reject Boulet's contention that the court should require the Commissioner to assign a different ALJ for proceedings after remand. I decline to discuss the unfortunate allegation of incompetence on the part of the ALJ except to find that it is utterly unfounded.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and REMANDED for the limited purposes described in this opinion.

DATED this 10th day of April, 2014.

Robert E. Jones, Senior Judge
United States District Court